OPINION
{¶ 1} Defendant-appellant W.C. Cardinal Company ("Cardinal") appeals the jury verdict rendered in the Harrison County Common Pleas Court for plaintiff-appellee Ronald Bush. Cardinal raises three issues in this consolidated appeal. First, we must decide whether the jury verdict finding Cardinal liable for an employer intentional tort was against the manifest weight of the evidence. Second, whether the trial court appropriately awarded prejudgment interest. Lastly, we must determine whether various litigation expenses can constitute costs. For the reasons stated below, the decision of the trial court is affirmed in part, reversed in part and remanded.
 FACTS {¶ 2} Cardinal is a manufacturer of steel pallet racking. In order to manufacture the racking, Cardinal uses three press brakes. The three presses are located in a row known as a beam press line and a press brake operator runs these machines. When the three presses are functioning properly the press brake operator does not have to pick up and move the metal from one press to the next, instead the operator can slide the metal down to the next press. In order to engage each press, the operator has to press the dual palm actuators at the same time. This ensures that upon actuation the operator's hands would not be in or near the pinch point. The pinch point is the place where the press actually presses, forms, and shapes the metal.
 {¶ 3} In March of 1999, Bush was employed by Cardinal as a press brake operator. On this day, press brake number two was broken. This meant that instead of sliding the steel down to press brake number two, Bush had to lift the steel out of press brake number one after it was pressed and place it on a rolling table where it would be transferred to a different press in the back of the shop. In removing the metal from press brake number one, Bush put his hands in the pinch point of the press. The press double cycled, actuating itself, and came down on Bush's left hand. The press amputated four of Bush's fingers, the thumb was left in tact. Two of the amputated fingers were reattached. Replantation of the fingers was more for cosmetic appearances rather than for function. Bush can drive a car, carry a bag of groceries, or a briefcase, but he is limited in his ability to feel anything with this hand. He experiences phantom pains and severe cold intolerance.
 {¶ 4} As a result of his injuries, Bush filed an intentional tort action against Cardinal. The case proceeded to trial. At the close of Bush's case, Cardinal moved for a directed verdict, which the trial court overruled. The jury returned a verdict of $650,000 for Bush. Cardinal timely appeals the judgment raising two assignments of error.
 {¶ 5} During the pendency of the appeal, Bush filed two post judgment motions with the trial court; the first motion requested costs and the second motion sought prejudgment interest. Despite Cardinal's opposition to these motions, the trial court awarded $15,508.05 in costs to Bush and prejudgment interest at the rate of 10% per annum from March 10, 1999, until the date the judgment is paid. Cardinal timely appeals from that decision raising two assignments of error. The two appeals were consolidated for review.
ASSIGNMENTS OF ERROR — CASE NO. 02 539 CA
 {¶ 6} The assignments of error raised in this appeal number are argued together. They contend:
 {¶ 7} "The Trial Court Committed Reversible Error When It Inappropriately Overruled Defendant's Motion For Directed Verdict Since There Was No Evidence Introduced At Trial To Support The Existence Of All The Essential Elements Of Plaintiff's Employer Intentional Tort Claim."
 {¶ 8} "The Jury Verdict Is Against The Manifest Weight Of The Evidence Since All Of The Elements Of Plaintiff's Employer Intentional Tort Claim Were Not Proved By A Preponderance Of The Evidence."
 {¶ 9} Under these assignments of error, Cardinal argues that Bush failed to establish the elements of employer intentional tort enumerated in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115. Therefore, according to Cardinal, the trial court erroneously denied its directed verdict motion. Furthermore, Cardinal insists that because the elements of employer intentional tort were not shown, the jury's verdict is against the manifest weight of the evidence.
DIRECTED VERDICT
 {¶ 10} Cardinal did not preserve the directed verdict assignment of error for appeal. Cardinal requested a directed verdict at the close of Bush's case. (Tr. 390-397). The record, however, is devoid of any evidence that Cardinal renewed this motion at the close of its case in chief. A directed verdict motion raised after the presentation of the plaintiff's case in chief must be renewed at the conclusion of all the evidence to preserve the error for appeal. Chemical Bank of New York v.Neman (1990), 52 Ohio St.3d 204; Helmich v. Republic-Franklin Ins. Co.
(1988), 39 Ohio St.3d 71, paragraph one of the syllabus. Failure to renew at the close of all the evidence waives any error in the earlier denial of that dispositive motion. Nwabara v. Willacy (1999), 135 Ohio App.3d 120,135, citing Helmich, 39 Ohio St.3d 71. Cardinal's motion was not renewed. Therefore, the directed verdict argument is not properly before this court. Thus, this argument is without merit.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 11} We turn our attention to Cardinal's manifest weight of the evidence argument. An appellate court will not reverse a judgment claimed to be against the weight of the evidence if the record contains some competent credible evidence going to every element of the case. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79. Every reasonable presumption must be made in favor of the judgment and the findings of facts. Id. If the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment most favorable to sustaining the trial court's verdict and judgment. Id.
 {¶ 12} Proof beyond that required to prove either negligence or recklessness is required to establish an intentional tort of an employer. Fyffe, 59 Ohio St.3d 115 (overruled by R.C. Chapter 2705, which was later deemed unconstitutional). In Fyffe, the Ohio Supreme Court set out the tripartite test which an employee must prove to prevail on an intentional tort claim against its employer. Id. First, the employee must prove the employer had knowledge of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation. Id. Second, the employer must have knowledge that if the employee is subjected by the employment to such dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty. Id. Third, the employer, under such circumstances and with such knowledge, did act to require the employee to continue to perform the dangerous task. Id. Proof of the three elements necessary to establish an intentional tort may be made by direct and/or circumstantial evidence. Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482,487, 1998-Ohio-408.
 {¶ 13} The first element of Fyffe requires the employer know of the dangerous process. Fyffe, 59 Ohio St.3d 115. The injury in this case happened due to two specific events: the double cycling of the machine and Bush placing his hands in the pinch point. Without one or the other of these factors, the injury would not have occurred. Therefore, Bush not only had to show that Cardinal knew the machine was malfunctioning, but also that Bush was placing his hands in the pinch point when removing the steel from the machine.
 {¶ 14} The testimony regarding whether Cardinal had knowledge that press brake number one was double cycling was conflicting. Jason Smith, foreman on the night of Bush's injury, stated that he had previously told maintenance supervisor Gerald Carlson, also part owner of Cardinal, the machine was double cycling. (Tr. 181). Smith stated that he was told to spray WD-40 on the machine to keep it running. (Tr. 181). Another Cardinal employee, Mike Carruthers, also testified that he saw the brake press double cycle previous to Bush's injury. (Tr. 189). He stated that he also told his supervisor, Carlson, about the double cycling. (Tr. 189). However, Carlson denied that he was ever told that there were problems with press brake number one. (Tr. 407). Additionally, Henry Higgins, president and part owner of Cardinal, stated that he was not informed nor was he aware that there were any problems with press brake number one. (Tr. 126).
 {¶ 15} Therefore, this evidence is susceptible to more than one interpretation. As stated earlier, under a manifest weight of the evidence argument, even if the evidence is susceptible to more than one construction, we must give it the interpretation consistent with the verdict rendered. The jury was free to decide which evidence it believed. Pirone v. General Motors Corp. (May 6, 1994), 11th Dist. No. 92-T-4810. Given the evidence, a reasonable jury could conclude that Cardinal knew the machine was double cycling.
 {¶ 16} The testimony regarding whether Cardinal had knowledge that Bush was placing his hands in the pinch point was also conflicting. Bush stated that due to press brake number two being broken down, an operator would have to put his hands in the pinch point to remove the metal from the press. Robert Bush, another Cardinal employee and brother of Ronald Bush, testified that the only way to remove the metal from the press was to stick your hands in the pinch point. (Tr. 195). William Roorda, a registered professional engineer who offered testimony as to safety with the press brake, stated that because press brake number two was broken down, Bush had to manipulate the metal out of the machine and, as such, his hands would be in the pinch point of press brake number one. (Tr. 275). Cardinal disagreed that an operator's hand would have to be in the pinch point to remove the steel from the press and claimed that it had no knowledge that employees were placing their hands in the pinch point to remove the steel. Carlson testified that the inability to use beam press number two did affect Bush's job, however, he claimed that the steel could be removed without placing one's hands in the pinch point. (Tr. 178-179). Furthermore, Higgins stated that if he knew an employee was putting their hands in the pinch point they would be removed from working on that machine. (Tr. 448).
 {¶ 17} There is no implied intent to injure merely because an employee used a dangerous method to perform one of the job duties, especially where safe alternative methods existed of which the employee was aware. King v. Hancock Mfg. Co., Inc. (Dec. 14, 1999), 7th Dist. No. 97JE72. However, given the testimony, the jury could conclude that there was no other alternative way to do the job without placing ones hand in the pinch point. Therefore, even though the evidence was controverted, the jury could conclude, given the evidence presented, that Cardinal had knowledge of the dangerous procedure, i.e. both the double cycling and placement of hands in the pinch point. As such, the first element ofFyffe is met.
 {¶ 18} The second element of Fyffe is that the employer must know that there is a substantial certainty of harm to the employee from the dangerous process. The fact that there is a high risk of harm or that the risk is great does not necessarily mean the act was intentional; mere knowledge and appreciation of a risk is not intent. Fyffe,59 Ohio St.3d 115. In most instances those acts could be correctly viewed as reckless. Id. at 117. The key is whether there is substantial certainty of harm. In order to prove this, a plaintiff must show the level of risk-exposure was egregious. Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172. An employer may be liable for the consequences of its act even though it never intended a specific result. Gibson v.Drainage Products, Inc., 95 Ohio St.3d 171, 179, 2002-Ohio-2008.
 {¶ 19} Cardinal argues that the second element is not met because Roorda testified that the injury happened because of the "random event" of the machine double cycling while Bush's hand was in the pinch point. (Tr. 310). Since random does not mean certain, Cardinal argues there was no evidence that the harm was substantially certain to occur.
 {¶ 20} Roorda does describe this as a "random event." (Tr. 310). However, in stating this he was explaining that since the machine was not double cycling every time and since press brake number two was not always out of commission the exact moment these events would occur at the same time was not predictable. (Tr. 309). He further explained that when both the machine doubled cycled and the operator had to put his hand in the pinch point to remove the steel, injury was certain to occur. (Tr. 309). He testified that given these exact conditions the accident was "substantially certain to occur." (Tr. 293).
 {¶ 21} Given the testimony, the jury could conclude that an injury was substantially certain to occur. Both Carlson and Higgins admitted that if the machine was double cycling and an operator put his hands in the pinch point that serious injury would occur to the employee. A reasonable jury could conclude that knowledge of the double cycling, along with press brake number two not working, indicates that Cardinal knew there was a substantial certainty of harm to the operator working on this machine. Therefore, a reasonable jury could conclude that the second element of Fyffe is met.
 {¶ 22} The third Fyffe element is that the employee was required to perform the dangerous task. The third element of the Fyffe test can be satisfied by presenting evidence that raises an inference that the employer through its actions and policies required the employee to engage in that dangerous task. Hannah, 82 Ohio St.3d at 487.
 {¶ 23} Bush testified that he was required to use press brake number one. (Tr. 340). He stated that he did not have the option of telling his supervisors that he would not operate press brake number one. Furthermore, Carruthers testified that after he told Carlson that press brake number one double cycled, Carlson told him to shut the machine off, restart it, and run the machine until it fell apart. (Tr. 191). Carlson denied this and he and Higgins both testified that if a machine was not operating correctly they would not run that machine.
 {¶ 24} Despite the conflicting testimony, a reasonable jury could conclude that Cardinal required the operator to operate the malfunctioning machine. Furthermore, as explained earlier, a jury could conclude that in order to remove steel from press brake number one, the operator had no alternative but to place his hands in the pinch point. Therefore, it was not only a requirement to use the malfunctioning machine but also to place his hand in the pinch point to remove the steel. Thus, competent credible evidence was presented as to the third element of Fyffe.
 {¶ 25} Although the evidence is conflicting, the jury is free to decide which evidence to believe. Given our standard of review and deference we must give to the jury, this assignment of error lacks merit and the jury verdict is upheld.
 ASSIGNMENT OF ERROR NO. ONE — CASE NO. 02HA546 {¶ 26} "The Trial Court Committed Reversible Error When It Awarded Prejudgment Interest."
 {¶ 27} Cardinal argues that the trial court erred in awarding prejudgment interest for two reasons. First, Cardinal claims that a settlement demand must be in written form and since Bush made no written settlement demand prejudgment interest was improperly granted. In the alternative, Cardinal argues that it acted in good faith during settlement negotiations and, as such, prejudgment interest was inappropriate.
 {¶ 28} R.C. 1343.03(C) states that interest shall be computed from the day the cause of action accrued to the day the money is paid if the court determines at a hearing that the party required to pay failed to make a good faith effort to settle and the party to whom the money is owed did not fail to make a good faith effort to settle. Garrett v. St.Elizabeth Health Ctr. (2001), 142 Ohio App.3d 610, 613. The party seeking prejudgment interest has the burden of proof. Helms v. Skalican (1996),112 Ohio App.3d 377, 383, citing Moskovitz v. Mt. Sinai Med. Ctr.,69 Ohio St.3d 638, 659, 1994-Ohio-324. "In proving its good faith settlement effort, and a lack of good faith by the opposing party, it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle." Tumino v. Gerber (1997), 121 Ohio App.3d 518, 521. The major purpose of prejudgment interest is to conserve legal resources and promote judicial economy by encouraging litigants to make good faith efforts to settle. Id. at 612.
 {¶ 29} Cardinal argues the trial court incorrectly determined that Bush was entitled to prejudgment interest. Cardinal insists that a written settlement offer is a prerequisite to an award of prejudgment interest. Since Bush never made a written settlement offer, it is Cardinal's position that Bush was not entitled to prejudgment interest.
 {¶ 30} A settlement demand must be made in order for a party to seek prejudgment interest. See LeMaster v. Huntington Natl. Bank (1995),107 Ohio App.3d 639, 644. However, when courts generally discuss the issue of settlement demands, they do not concentrate on whether it is written or not. The key is whether specific figures have been tendered to the other party. See Id. In the case at hand, both parties agree that there were oral settlement offers, and counteroffers. Therefore, an intelligent conversation as to settlement was occurring. In situations where, as here, both parties admitted oral offers were made, the necessity of a written offer is not fatal to the party seeking to obtain an award of prejudgment interest. Thus, the lack of a written settlement offer in the situation presented does not per se prevent an award for prejudgment interest.
 {¶ 31} Accordingly, we turn our attention to Cardinal's next argument that it did act in good faith in settlement negotiations and an award of prejudgment interest was not appropriate. The trial court found that Cardinal failed to make a good faith effort to settle and granted prejudgment interest. 10/10/02 J.E. An appellate court reviews a trial court's good faith determination for an abuse of discretion. Garrett,142 Ohio App.3d at 613. Evidence of a party's failure to act in good faith can be derived from the following four elements: (1) the party failed to fully cooperate in discovery; (2) the party failed to rationally evaluate his risks and potential liability; (3) the party attempted to unnecessarily delay any of the proceedings; and (4) the party failed to make a good faith monetary settlement offer or respond in good faith to an offer by the other party. Id., citing Hawley v. Ritley (1988),35 Ohio St.3d 157. However, a party does not need to make a monetary settlement offer if that party has a good faith objectively reasonable belief that he has no liability. Garrett, 142 Ohio App.3d at 613;Edgerson v. Cleveland Elec. Illuminating Co. (1985), 28 Ohio App.3d 24.
 {¶ 32} Here, none of the four elements are met. Bush first made an offer of $800,000 to settle the case. Cardinal counter offered for $15,000, which Bush countered for $385,000. On the eve of trial, Cardinal countered this offer and stated it would settle for $105,000. Bush then countered offered for $250,000, which Cardinal refused. Therefore, it can be concluded that there were settlement offers and counteroffers made between the parties. Also, the record is devoid of any evidence that Cardinal unnecessarily tried to delay the lawsuit or that it did not cooperate in discovery. Furthermore, given the facts in this case it does not appear that Cardinal failed to rationally evaluate its risks and potential liability. The facts in this case indicate that Cardinal had a good case for believing it was not liable; Carlson and Higgins maintained they had no knowledge of the dangerous process and the injury was a random event. Given the conflicting facts as to whether Cardinal had knowledge, a settlement offer of $105,000 could be seen as evaluating the risks and potential liability. As such, the trial court abused its discretion in awarding prejudgment interest; the facts in this case do not support the finding that Cardinal failed to act in good faith. This assignment of error has merit.
ASSIGNMENT OF ERROR NO. TWO — CASE NO. 02HA546
 {¶ 33} "The Trial Court Committed Reversible Error When It Awarded Expenses Of Litigation As Court Costs."
 {¶ 34} Bush moved for costs in the amount of $15,508.05. The trial court granted the request. Cardinal claims the trial court's decision was incorrect. Cardinal's argument focuses on expert witness fees, videotaped depositions costs, and exhibit fee costs.
 {¶ 35} "Except when express provisions therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." Civ.R. 54(D). However, the categories of litigation expenses comprising "costs" are limited.Centennial Ins. Co. v. Liberty Mut. Ins. Co. (1982), 69 Ohio St.2d 50. "Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment." Williamson v. Ameritech Corp., 81 Ohio St.3d 342,1998-Ohio-347, quoting Benda v. Fana (1967), 10 Ohio St.2d 259, paragraph one of the syllabus. "The subject of costs is one entirely of statutory allowance and control." Williamson, 81 Ohio St.3d 342, quoting State exrel. Michaels v. Morse (1956), 165 Ohio St. 599, 607, reaffirmed in Vancev. Roedersheimer, 64 Ohio St.3d 552, 555, 1992-Ohio-89.
 {¶ 36} Videotaped depositions constitute costs by Sup.R. 13(D)(2). Case v. Conrad, 94 Ohio St.3d 299, 302, 2002-Ohio-793. As such, the cost of obtaining a videographer and to take the videotape deposition at trial was properly taxable as a cost.
 {¶ 37} However, exhibit fees and expert witness fees are not taxable as costs. As stated above, a statutory directive must exist for litigation expenses to be taxed as costs. There is no statute directing exhibit fees to be taxed as costs. Bush contends that the exhibits were necessary and vital to the litigation and were allowed to be taxed as costs. While it may be true that the exhibits were necessary to the litigation, there still must be a statute directing the fees to be taxed as costs. Lewis v. Clark Equip. Co. (Dec. 14, 2001), 1st Dist. Nos. C0990441, C-990687, and C-990714. In the absence of a statute, the fees cannot be taxed as costs. Id. Therefore, the trial court incorrectly awarded the exhibit fees as costs.
 {¶ 38} Furthermore, the cost of over $12,000 for expert witnesses was not taxable as costs. Expert witness fees are not a "cost" absent a statutory directive. Beal v. State Farm Ins. Co. (1999),132 Ohio App.3d 203, 209 (expert witness fees are not to be awarded as costs, 8th Dist.); Coleman v. Jagniszcak (1995), 104 Ohio App.3d 413 (8th Dist.); Shipman v. Alamo Rent-A-Car, Inc. (1990), 70 Ohio App.3d 333 (8th Dist.); Rosenbaum v. Voorhees (May 18, 1990), 11th Dist. No. 89-G-1522;State ex rel. Williams v. Colasurd (1995), 71 Ohio St.3d 642, 644; In reElection of November 6, 1990 for Office of Atty. Gen. of Ohio (1991),62 Ohio St.3d 1.
 {¶ 39} Irrespective of the above holdings, our court has held that the trial court does not abuse its discretion in awarding expert fees to the prevailing party. First Natl. Bank of Dillonvale v. Progressive Cas.Ins. Co. (1993), 94 Ohio App.3d 370, 377. Our ruling was based on the reasoning that we did not want to place absolute constraints on the discretion to award costs. Id. Despite our previous ruling, we now agree with our sister districts that without a statutory directive expert witness fees do not constitute costs. In the case at hand, there is no statutory directive for awarding the cost of expert fees. Thus, the trial court improperly awarded expert fees. This assignment of error has merit.
 {¶ 40} For the foregoing reasons, the decision of the trial court in case No. 02 539 CA is affirmed. However, the decision of the trial court in case No. 02 HA 546 is affirmed in part, reversed in part and remanded. The videotape deposition fees is affirmed. The trial court's award of prejudgment interest, expert fees and exhibit fees is reversed and that case is remanded for further proceedings according to law and consistent with this court's opinion.
Waite, P.J., and Donofrio, J., concur.