DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Sylvia Pintur, appeals from the judgment of the Lorain County Court of Common Pleas which granted summary judgment in favor of Appellee. This Court affirms.
 I. {¶ 2} Appellant's husband, Dennis Pintur ("Pintur"), worked for Appellee for nearly twenty years. On May 29, 1998, Pintur was working in the bloom caster operation, an area in which he had been assigned for only four weeks. In this area of Appellee's facility, dummy bars are used to pull steel from molds. There are five strands used, each with a dummy bar capable of pulling a bloom (a length of steel). The dummy bars attach to each strand of steel and run down a track to a run-out area where the strands are cut into equal lengths. When not in use, the ten-ton dummy bars are typically kept in a storage device known as a basket. When the dummy bars remain in the caster area, they are said to be in a charged position.
 {¶ 3} During the course of Pintur's work shift on May 29, a bloom that had been cut completely through prior to reaching the end of the run-out area became stuck in the run-out area on strand 2. As a result, Pintur and other employees attached a steel cable to the bloom in an attempt to pull it to an area from which a crane could be used to move the bloom to its appropriate finished position. This cable was attached from an elevated platform above the run-out area. Upon attempting to move the bloom, the employees learned that the cable was stuck and needed to be removed. Thereafter, Pintur entered the run-out area on strand 2 to remove the cable. At the time Pintur entered the run-out area, the dummy bar for strand 3 was still in the charged position. While Pintur was working in the run-out area, another employee opened the strands to begin preparation for the next cast. Opening the strands caused the dummy bar in strand 3 to run down its track into the run-out area. Tragically, after another employee attempted to warn him, Pintur ran into the path of the dummy bar and was killed.
 {¶ 4} On February 3, 1999, Appellant filed suit against U.S. Kobe Steel, Appellee's predecessor, asserting an intentional tort claim. That complaint was subsequently dismissed by Appellant and the matter was refiled on May 26, 2000. Following a stay resulting from bankruptcy proceedings, Appellee moved for summary judgment on September 13, 2004. Appellant responded in opposition on November 1, 2004. Following an evidentiary dispute and the filing of Appellee's reply brief, the trial court granted summary judgment in Appellee's favor on all counts in Appellant's complaint. Appellant timely appealed the trial court's judgment, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS THERE EXISTED GENUINE ISSUES OF MATERIAL FACT REGARDING REMOVAL OF SAFETY DEVICES, FAILURE TO TRAIN EMPLOYEES, FAILURE TO IMPLEMENT SAFE JOB PROCEDURES AND A FAILURE TO WARN OF HAZARDS WITHIN THE PARTICULAR KNOWLEDGE OF APPELLEE[.]"
 {¶ 5} In her sole assignment of error, Appellant contends that the trial court erred in granting summary judgment in favor of Appellee. We disagree.
 {¶ 6} This Court reviews an award of summary judgment de novo. Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle
(1991), 75 Ohio App.3d 732, 735.
 {¶ 9} In support of its motion, Appellee relied upon the affidavits of Mark Miller, an Area Manager for Appellee, and David Syphers, Ray Garza, and John Marr, employees of Appellee. In addition, Appellee utilized the deposition testimony of Appellant. In its motion, Appellee did not challenge the facts asserted by Appellant. Rather, Appellee argued that accepting those facts as true, Appellant's intentional tort claim should fail as a matter of law.
 {¶ 10} In response, Appellant filed its opposing motion, relying upon the affidavit of Richard Hayes, a safety expert retained by Appellant, and the depositions of Appellee's employees David Young, James Bremer, Dennis Knox, Linda Tschaekofske, Ray Garza, and Ken Loushin. In addition, Appellant submitted the settlement agreement reached by Appellee and OSHA. In its motion, Appellant urged that Appellee was aware of the specific dangers that were present and that led to the death of her husband. Ultimately, the trial court disagreed and granted summary judgment in Appellee's favor.
 {¶ 11} Accordingly, we proceed to determine whether a genuine issue of material fact remains to be litigated with respect to Appellant's intentional tort claim.
"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." (Citations and paragraph numbering omitted.) Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, paragraphs one and two of the syllabus.
As we find it to be dispositive, our analysis begins with the substantial certainty prong of Fyffe.
 {¶ 12} "The key is whether there is substantial certainty of harm. In order to prove this, a plaintiff must show [that] the level of risk-exposure was egregious." Bush v. W.C. Cardinal Co., 7th Dist. Nos. 02539CA 02HA546, 2003-Ohio-5443, at ¶ 18. Appellant urges that this prong was met because Appellee failed to train Pintur, failed to maintain adequate "safe job procedures," and failed to utilize a safety mechanism with the dummy bars. In addition, Appellant relies upon the fact that Appellee was issued citations both before and after this accident to demonstrate knowledge by Appellee of the danger. This Court finds that Appellant's evidence does not demonstrate a genuine issue of material fact.
 {¶ 13} Appellant asserts that the prior accidental release of dummy bars placed Appellee on notice of the dangers involved in being in the run-out area. However, the prior accidents relied upon by Appellant are dissimilar to the accident at hand. While Linda Tschaekofske swore in her deposition that she had been injured while working, her injury was in no way related to the release of a dummy bar. In addition, on the prior occasion when a dummy bar was released, Appellee was cited by OSHA. However, that release was also distinct from the instant matter, in that the dummy bar was released as a result of the rapid loss of hydraulic pressure and no injury resulted. To alleviate that danger, Appellee installed a siren to warn of any significant loss in hydraulic pressure. Finally, the incidents that Ray Garza testified to also did not result in injury.[1] No evidence was submitted by Appellant that the accidental release of a dummy bar had ever resulted in injury prior to May 29, 1998.
 {¶ 14} There is no question that a ten-ton piece of steel falling at a rapid speed carries with it a substantial risk of injury or death. The focus in an intentional tort claim, however, is upon the employer's knowledge of the exact danger which caused the injury. Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172. In the instant matter, Appellee's knowledge does not rise to the level of substantial certainty.
 {¶ 15} Appellee does not dispute that it was aware that workers had entered the run-out area on previous occasions and that dummy bars had previously been accidentally released. However,
"[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore an exception * * * to the exclusivity of the Act." Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 117, modified by Fyffe,59 Ohio St.3d 115.
Based upon the record, we cannot find that the risk level surrounding Pintur's work in the run-out area was egregious. The evidence before the trial court indicated that the run-out area itself was not inherently dangerous. Further, the dummy bar itself is not dangerous, unlike an exposed nip point. See Brookover v. Flexmag Ind., Inc. 4th Dist. No. 00CA49, 2002-Ohio-2404. Rather, a danger was created herein only when a dummy bar was improperly left in a charged position and the dummy bar was improperly released by another employee and Pintur tragically reacted in a manner which placed him directly in the path of the dummy bar. While negligent and perhaps reckless for its failure to lockout the strands and train Pintur, as a matter of law Appellee cannot be said to have been substantially certain that injury would result from Appellee working in the run-out area. Our conclusion is further bolstered by the depositions taken below in which employees stated that working in the run-out area was common and injuries were rare.[2]
 {¶ 16} Appellant also asserts that a rebuttable presumption of intent should have been utilized by the trial court because Appellee failed to use a safety device in conjunction with the dummy bars. A review of the record, however, does not support Appellant's assertion that a viable safety device existed. In his deposition, Garza noted that the device Appellant referenced was not a safety device, but a maintenance device. Further, the other evidence submitted by Appellant supported the conclusion that the device was never able to be utilized during the casting operation. Accordingly, assuming that the device was designed as a safety device, Appellant has produced no evidence which would tend to demonstrate that the device would have prevented Pintur's death. Appellant's claim regarding the failure to use a safety device, therefore, lacks merit.
 {¶ 17} The workers' compensation fund "confronts head-on the unpleasant, even harsh, reality" that workers are exposed to the inherent risks of injury and disease which accompany certain industries. Based upon the fact that workers repeatedly performed activities in the run-out area without significant injury, we find the above statement to be applicable, i.e., the industry Pintur worked in involved inherent dangers, dangers which the workers' compensation fund was designed to insure against. Accordingly, the trial court did not err in finding that Appellant's intentional tort claim must fail. Appellant's sole assignment of error is overruled.
 III. {¶ 18} Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Whitmore, J. concur.
[1] There is also no indication in the record that Garza notified Appellee's management of the incidents that he described in his deposition.
[2] The sole injury in the record was mentioned by Ms. Tschaekofske. While Tschaekofske noted that she had been injured, she was involved in an activity unrelated to the casting activity that required Pintur to enter the run-out area. Further, it is unclear from the record the extent of her injury, when the injury occurred, and if management was aware that she had been injured.