DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Tony E. Harris has appealed from the judgment of the Wayne County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Bekaert Corporation ("Bekaert"). This Court affirms.
 I {¶ 2} The original cause of action in this matter stemmed from a workplace accident that occurred on August 30, 2002. On that date, Appellant was assigned to the Heat Treatment Department in Bekaert's Orrville plant. Appellant had been sent by his supervisor to gather cleaning materials from a locker on the other side of the plant. While making his way back to the Heat Treatment Department, Appellant stopped to converse with co-workers who were assigned to the pickle line.[1] During the conversation, the Activator Coil,[2] a steel coil used to activate the chemical bath after a period of dormancy, fell over onto Appellant, pinning him to a tow motor.[3]
Appellant suffered a broken leg.
 {¶ 3} On August 17, 2004, Plaintiff-Appellant Tony E. Harris filed a complaint for personal injury against Bekaert[4] in the Wayne County Court of Common Pleas. The complaint alleged that Bekaert, despite knowledge of the existence of a dangerous condition that was substantially certain to cause harm to an employee, required Appellant to work in the dangerous area where the harm was substantially certain to follow.
 {¶ 4} On May 16, 2005, Bekaert filed a motion for summary judgment. Appellant filed a memorandum in opposition to Bekaert's motion for summary judgment on June 2, 2005. On June 13, 2005, the trial court entered a final judgment entry granting Bekaert's motion for summary judgment and dismissing Appellant's claim with prejudice.
 {¶ 5} Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO APPELLEE CONTOURS BECAUSE THERE EXISTS GENUINE ISSUES OF MATERIAL FACT REGARDING APPELLANT'S CLAIM FOR AN EMPLOYER INTENTIONAL TORT." {¶ 6} In his sole assignment of error, Appellant has argued that the trial court erred when it granted Bekaert's motion for summary judgment because genuine issues of material fact remained for the jury's consideration. Specifically, Appellant has argued that he established the three elements of a prima facie case for an intentional tort by an employer or in the alternative, presented genuine issues of material fact concerning the elements. We disagree.
 {¶ 7} This Court reviews the award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. In doing so, we view the facts presented by the moving party in a light most favorable to the non-moving party and resolve any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986),479 U.S. 948, 107 S. Ct. 433, 93 L. Ed. 2d 383.
 {¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if:
For purposes of the appeal, Contours and Bekaert will be referred to collectively as "Bekaert."
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 9} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. "Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings." Elsass v. Crockett,
9th Dist. No. 22282, 2005-Ohio-2142, at ¶ 15. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmermanv. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 10} The instant matter involves a claim of an employer intentional tort. In Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, the Ohio Supreme Court articulated the legal standard by which courts determine whether an employer committed an intentional tort against an employee:
"[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id., at paragraph one of the syllabus.
Furthermore, mere knowledge and appreciation of a risk by an employer is not enough to establish intent. (Quotations omitted).Barger v. Freeman Mfg Supply Co., 9th Dist. No. 03CA008313,2004-Ohio-2248, at ¶ 10, citing Fyffe, 59 Ohio St.3d, at paragraph two of the syllabus.
 {¶ 11} Moreover, in order to establish an intentional tort by an employer, a plaintiff must demonstrate proof beyond that required to prove negligence or recklessness. Fyffe,
59 Ohio St.3d at paragraph two of the syllabus. If a plaintiff can show that harm or consequences will follow the risk, that the employer knows that injuries to employees are certain or substantially certain to result from the risk, and yet the employer still requires the employee to proceed, the employer is treated by the law as if he had in fact desired the end result. See Id. This Court has held that it is the element of substantial certainty which differentiates negligence from an intentional tort. Marksv. Goodwill Industries of Akron, Ohio, Inc., 9th Dist. No. 20706, 2002-Ohio-1379, at ¶ 14, citing Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 116. According to this Court in Marks, "[t]he line must be drawn where the known danger ceases to be a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the [employer] a substantial certainty." (Quotations omitted). Marks at ¶ 15.
 {¶ 12} When determining intent, "this Court proceeds on a case-by-case basis and considers the totality of the circumstances." Id. at ¶ 16. Concerning substantial certainty, we have stated that:
"Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty include, but are not limited to: prior acts of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards." Id.
 {¶ 13} After a careful review of the record, we find that no genuine issue of material fact existed to be litigated. Therefore, the trial court's award of summary judgment to Bekaert was proper.
 {¶ 14} We begin the analysis by noting that the Fyffe test is a conjunctive test. That is, all three elements must be established in order to maintain a prima facie case of an intentional tort by an employer. It follows, therefore, that if there remains no genuine issue of material fact as to one of the elements, discussion of the other elements becomes moot. SeePintur v. Republic Technologies, International, LLC., 9th Dist. No. 05CA008656, 2005-Ohio-6220, at ¶ 11 (finding the issue of substantial certainty dispositive and not addressing the otherFyffe elements). Accordingly, since we find it to be dispositive in the instant matter, we begin our discussion with the substantial certainty prong.
 {¶ 15} In order to prove substantial certainty of harm, this Court has recently held that "a plaintiff must show [that] the level of risk-exposure was egregious." (Quotations omitted).Pintur at ¶ 12. Appellant has argued that this prong was met because Bekaert knew that unbanded steel coils anywhere in the plant would put nearby employees at risk, that Bekaert had this knowledge to a substantial certainty, and that Bekaert's post-accident OSHA violation proved that injury was substantially certain to occur. This Court finds that Appellant's evidence does not demonstrate a triable genuine issue of material fact as to the substantial certainty issue because the evidence fails to establish that the level of risk-exposure was egregious.
 {¶ 16} Appellant's primary argument is that steel coils that weighed approximately 4,000 pounds and had a tendency to "spring" or "slide" constituted a known danger that Bekaert was substantially certain would cause harm to an employee required to work with or around them. Appellant has gone to great lengths to paint a picture of a tense, spring-loaded Activator Coil, which while left unbanded, was poised to strike at the first hapless employee that happened across its path:
"[Bekaert] was playing with a loaded gun by not banding the Activator Coil in the pickle line area. It [was] only a matter of time when the giant slinky sprung. It was substantially certain harm would result when it did. [Bekaert] created the gun, failed to place a safety on it [steel banding], and knew any employee, including [Appellant], was going to be injured when it went off." Essentially, Appellant has argued that the Activator Coil, by its very nature as a steel coil, created an egregious risk-exposure. See Pintur at ¶ 12. We disagree.
 {¶ 17} This Court does not question the reality that a "springing" or "sliding" 4,000 pound steel coil carries with it a substantial risk of injury or death. However, "[t]he focus in an intentional tort claim * * * is upon the employer's knowledge of the exact danger which caused the injury." Id. at ¶ 14. In the instant matter, the record is clear that the Activator Coil which fell on Appellant was a "dead" coil. That is, it had no spring or tension on it. Therefore, the "exact danger which caused the injury" was not that of a springing or sliding steel coil, but that of a reasonably benign coil that had never fallen on an employee in the past.
 {¶ 18} While the Activator Coil inherently posed some risk, we have held that:
"`There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to * * * institute safety measures[.] Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However * * * such conduct should not be classified as an intentional tort.'" (Quotations omitted). Pintur at ¶ 15, quoting Van Fossen, 36 Ohio St.3d at 117.
There is no doubt that working with and around steel coils, even "dead" ones, is potentially dangerous work. However, "dangerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach." Naragon v. Dayton Power Light Co. (Mar. 30, 1998), 3rd Dist. No. 17-97-21, 1998 WL 142386, at *7. "Were it otherwise, any injury associated with inherently dangerous work * * * could subject an employer to intentional tort liability, whatever the cause." Id.
 {¶ 19} Other facts present in the record indicate that Bekaert was not substantially certain that the Activator Coil would harm Appellant. Appellant was tasked by his supervisor to get cleaning supplies from the cleaning locker. The cleaning locker was not located near where the Activator Coil was stored. Furthermore, the Activator Coil was not stored near the walkway or along the path to the cleaning locker. There is no evidence in the record that Appellant was required to go near the Activator Coil. Quite the opposite is true. It is evident from the record that Appellant deviated from the route solely to speak with co-workers. Appellant himself testified that the Activator Coil was 10-20 feet away from the employee walkway and that his route to the cleaning locker did not take him near the Activator Coil.
 {¶ 20} As discussed above, this Court has stated that prior acts of a similar nature constitute "relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty[.]" Marks at ¶ 16. In the instant case, the record clearly demonstrates that the Activator Coil had never been involved in an accident prior to falling on Appellant nor had Bekaert received complaints concerning the Activator Coil falling over or posing any danger at all to employees in the pickle line area. A number of witnesses testified in their depositions that they had never even seen the Activator Coil "slide" or fall over at all, let alone injure anybody.
 {¶ 21} Appellant has argued that while prior similar accidents are one factor to consider in the substantial certainty analysis, it is not dispositive by itself. We agree. However, "[t]he absence of prior accidents strongly suggests that injury from this procedure was not substantially certain to occur."Thomas v. Barberton Steel Iron, Inc. (Apr. 1, 1998), 9th Dist. No. 18546, at 7.
 {¶ 22} Another factor to consider is federal or state safety violations. Marks at ¶ 16. Appellant has argued that Bekaert's citation by OSHA after the accident is a factor to be considered in determining that Bekaert had knowledge to a substantial certainty that the accident would occur. This argument is unpersuasive. It is undisputed that prior to the accident, Bekaert was never cited or ordered by OSHA to band the Activator Coil and this Court refuses to impute this knowledge to Bekaert after the fact.
 {¶ 23} After analyzing the totality of the circumstances, we cannot say that Bekaert was substantially certain that injury would result from Appellant being in proximity to the Activator Coil. Based upon the lack of prior accidents, the lack of prior citations by OSHA or similar governmental authority, the disparity between the "dead" Activator Coil and the "live" steel-banded coils, the relative ease and sense of safety evidenced by Appellant's conduct, and the fact that
Appellant wasn't required to be near the Activator Coil to begin with, we find that Appellant has failed to demonstrate that the level of risk-exposure was so egregious as to amount to an intentional wrong. See Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172.
 {¶ 24} Appellant's sole assignment of error lacks merit.
 III {¶ 25} Appellant's sole assignment is overruled. The judgment of trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Moore, J. concur
[1] The pickle line is an area where the steel coils are chemically treated for processing.
[2] The Activator Coil is also referred to as a "phos coil."
[3] A tow motor is a motorized piece of equipment used to pick up the steel coils and hoist them onto the hook used to move them down the pickle line.
[4] At the time of the accident, Appellant was employed by Contours, Ltd. Contours and Bekaert subsequently merged, Bekaert being the surviving entity.