DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Matthew Pattyson, appeals the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of Appellee, Dave Phillips Masonry, Inc. ("Phillips Masonry"), thereby dismissing Pattyson's complaint. This Court affirms.
 I. {¶ 2} Pattyson is a mason who was employed by Phillips Masonry at the time relevant to this matter. On February 5, 2005, Pattyson was working with other Phillips Masonry employees to install a corbel brick veneer on a building project. After the veneer was installed, Pattyson remained on a scaffold to pack up his personal tools. As he was packing his tools, an upper portion of the brick veneer fell on top of him, causing him to fall off the scaffold and sustain injuries. *Page 2 
 {¶ 3} On January 18, 2007, Pattyson filed a complaint against Phillips Masonry sounding in employer intentional tort. On March 19, 2007, Phillips Masonry filed a motion to dismiss pursuant to Civ. R. 12(B)(6), asserting that Pattyson's complaint did not comply with the heightened pleading requirements enunciated by the Ohio Supreme Court inMitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, in regard to claims alleging employer intentional tort. Pattyson opposed the motion to dismiss and moved to file an amended complaint. The trial court allowed Pattyson to amend his complaint to comply with the heightened pleading requirements. Phillips Masonry answered the amended complaint, entering a general denial to the allegations and asserting numerous affirmative defenses.
 {¶ 4} On December 18, 2007, Phillips Masonry filed a motion for summary judgment. It filed Pattyson's deposition testimony in support. Pattyson responded in opposition, appending Pattyson's affidavit; the affidavit of Scot Whitmire, a purported expert; a copy of record notes on file with the North Olmsted Building Department; a City of North Olmsted inspection worksheet; and a letter from the North Olmsted Building Inspector to Sean O'Brien, the general contractor for the storefront building project where the accident occurred. Phillips Masonry replied, challenging the admissibility of many of the attachments to Pattyson's opposition. Pattyson filed a sur-reply.
 {¶ 5} On March 17, 2008, the trial court issued a ruling on the motion for summary judgment. As a preliminary matter, the trial court ruled that it would consider Pattyson's statement in his affidavit that he was scared that the wall would fall upon finding that it did not contradict Pattyson's deposition testimony that he was not overly concerned that the wall would fall. The trial court found that these statements merely expressed an ambiguous degree of concern by Pattyson. The trial court, however, excluded certain other evidence submitted by *Page 3 
Pattyson. Specifically, the trial court declined to consider for lack of evidentiary foundation Pattyson's assertion in his affidavit that the foreman with whom he had been working improperly installed the wall ties. The trial court further declined to consider the North Olmsted Building Inspector's report, finding it not to be proper evidence pursuant to Civ. R. 56(C) because the report had not been properly incorporated into an affidavit. Finally, the trial court declined to consider all averments by Pattyson's purported expert which were premised on inadmissible evidence such as the building inspector's report and Pattyson's unfounded allegations that he later learned that the foreman had improperly installed the wall ties. This effectively precluded from consideration Mr. Whitmire's conclusion that it was substantially certain that the wall, as built, would fall.
 {¶ 6} The trial court found that there was no evidence to demonstrate that Phillips Masonry knowingly subjected Pattyson to a process or condition which it knew would be substantially certain to result in injuries to Pattyson. Therefore, the trial court granted summary judgment in favor of Phillips Masonry. Pattyson timely appeals, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT."
 {¶ 7} Pattyson argues that the trial court erred by granting summary judgment in favor of Phillips Masonry. This Court disagrees.
 {¶ 8} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and *Page 4 
resolving any doubt in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 9} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 10} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ. R. 56(C), Civ. R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,449.
 {¶ 11} As a preliminary matter, this Court notes that Pattyson has not challenged on appeal the trial court's refusal to consider certain evidentiary materials appended to his response in opposition to the motion for summary judgment. Accordingly, Pattyson implicitly concedes that the trial court considered only the evidence properly before it. As this Court must "review the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion[,]" we will not consider the materials which the trial court refused to *Page 5 
consider. See Harris v. Allstate Ins. Co., 9th Dist. Nos. 03CA0070, 03CA0072, 2004-Ohio-4955, at ¶ 5, quoting Am. Energy Servs. Inc. v.Lekan (1992), 75 Ohio App.3d 205, 208.
 {¶ 12} The legislature modified R.C. 2745.01 addressing employer intentional tort liability on April 7, 2005. However, those provisions are inapplicable to this case because Pattyson's accident occurred prior to the effective date of that statute.[1] Talik v. Fed. MarineTerminals, Inc., 117 Ohio St.3d 496, 2008-Ohio-937, at ¶ 17. Accordingly, the three-prong test set forth in Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, remains applicable to this Court's analysis. Talik at ¶ 17.
 {¶ 13} In Fyffe, the Ohio Supreme Court enunciated the legal standard by which courts must determine whether an employer has committed an intentional tort against an employee:
 "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
Furthermore, mere knowledge and appreciation of a risk by an employer is not enough to establish intent. Barger v. Freeman Mfg. Supply Co., 9th Dist. No. 03CA008313, 2004-Ohio-2248, at ¶ 10, citing Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. *Page 6 
 {¶ 14} Moreover, in order to establish an intentional tort by an employer, a plaintiff must demonstrate proof beyond that required to prove negligence or recklessness. Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. If a plaintiff can show that harm or consequences will follow the risk and that the employer knows that injuries to employees are certain or substantially certain to result from the risk, yet the employer still requires the employee to proceed, the employer is treated by the law as if he had in fact desired the end result. See id. This Court has held that it is the element of substantial certainty which differentiates negligence from an intentional tort. Marks v. GoodwillIndustries of Akron, Ohio, Inc., 9th Dist. No. 20706, 2002-Ohio-1379 (Carr, J., dissenting, in part, upon a finding that a genuine issue of material fact existed as to the element of substantial certainty on the specific facts of the case), citing Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, 116. "The line must be drawn where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the [employer] a substantial certainty." (Internal quotations omitted.) Marks.
 {¶ 15} When determining intent, "this Court proceeds on a case-by-case basis and considers the totality of the circumstances." Id. Concerning substantial certainty, we have stated that:
 "Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty include, but are not limited to: prior acts of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards." Id.
Furthermore, in order to prove substantial certainty of harm, this Court has held that "a plaintiff must show [that] the level of risk-exposure was egregious." (Quotations omitted). Pintur v. Republic Technologies,Internatl, LLC, 9th Dist. No. 05CA008656, 2005-Ohio-6220, at ¶ 12. *Page 7 
 {¶ 16} Pattyson argues that genuine issues of material fact exist in regard to all three prongs of the Fyffe test. The Fyffe test, however, is a conjunctive test, i.e., all three elements must be established in order to maintain a prima facie case of an intentional tort by an employer. It follows, therefore, that if there remains no genuine issue of material fact as to one of the elements, discussion of the other elements becomes moot. See Pintur at ¶ 11 (finding the issue of substantial certainty dispositive and not addressing the otherFyffe elements). Accordingly, because this Court finds it to be dispositive in the instant matter, we begin our discussion with the substantial certainty prong.
 {¶ 17} Phillips Masonry supported its motion for summary judgment with Pattyson's deposition. Pattyson submitted his own affidavit, as well as other additional documents, only parts of which were considered by the trial court, in support of his opposition. Based upon a thorough review of the record which may properly be considered, this Court cannot say that the risk-exposure presented was egregious. Accordingly, no genuine issue of material fact exists to be litigated, and the trial court's award of summary judgment in favor of Phillips Masonry was proper.
 {¶ 18} Pattyson testified at his deposition that he graduated from the MCAA Masonry School in 2003, where he studied the masonry trade. He testified that his course of study also included safety issues pertaining to bricklaying and activities on a construction site. He testified that he was instructed to walk off a job if it was not being done properly. During his course of study and since that time, he has worked as a mason for various companies.
 {¶ 19} Pattyson was injured when a corbel veneer which he had been constructing fell on him. A corbel wall juts out progressively brick-by-brick. Pattyson testified that the nature of a corbel wall increases the risk of collapse if it is not done properly. He explained the proper way *Page 8 
to construct a corbel veneer, asserting that it must be built with proper wall ties and be plumb and level. He testified that any approved wall tie constitutes a proper wall tie. He admitted in his deposition that the type of wall ties used in the instant project were acceptable for use in constructing a corbel wall. Pattyson testified that the bricklayer is responsible for setting the wall ties, screwing them into the studs in the wall, before applying the mortar-covered bricks. He testified that for such a wall the ties should be spaced "16 inches on vertical and 32 inches on horizontal."
 {¶ 20} Pattyson testified that he had been working for Phillips Masonry for approximately 7 months prior to the accident. He testified that he worked six or seven jobs for them during that time. He testified that he had worked with various foremen and that he had had some concerns regarding all of them with respect to scaffold safety, equipment safety and equipment maintenance. He testified that he voiced his concerns to Dave Phillips, the owner of the company, although he never reported any concerns regarding wall tie issues. Pattyson testified that Phillips Masonry has a very active safety program now, although safety meetings were "hit and miss" earlier.
 {¶ 21} On the day of the accident, Pattyson was finishing a corbel veneer with foreman Candelario Cantera ("Candy"). He had worked on the wall the previous day with foreman Roberto Pangera and another mason. He could not recall any prior wall tie safety issues involving Candy. In fact, he testified that he had never had any prior problems working with Candy. With regard to other foremen, he testified that he was concerned that they failed to hit the studs or properly space the ties. He testified, however, that he never felt that the resulting walls were substantially certain to fall, and he admitted that he never went back to replace any such walls. *Page 9 
 {¶ 22} Pattyson testified that he and Candy ran out of wall ties for the last 36 inches of the veneer. He testified that there were no other occasions when the company ran out of ties for a job. Significantly, he admitted that he had been attaching the available ties to the wall at horizontal intervals of 16 inches rather than 32 inches, but he did not tell anyone that. He testified that he used such spacing because of "the way the studs on the interior of the building fell," although he did not clarify why the use of extra wall ties was necessary. He further admitted that he was not paying any attention to how Candy was attaching the ties to the wall.
 {¶ 23} After reporting that there were no more ties, Pattyson testified that Candy told him to finish the job. He admitted that he did not voice any concerns regarding safety when told to finish the job without additional wall ties. During his deposition, he testified that while he was concerned that the wall might fall, he was "not overly" concerned. In fact, he testified that he did not believe that it was substantially certain that the wall would fall. He agreed that he would not have completed the wall had he believed it was substantially certain to fall. Significantly, he further testified that he had no reason to believe that Candy believed that the wall would fall. Pattyson agreed, based on his past experiences working with Candy, that Candy himself would not have continued to construct the corbel veneer under the circumstances if he knew or thought it would fall.
 {¶ 24} Pattyson testified that as he and Candy finished the veneer, he noticed that it was "very shaky" and "actually wobbling." He averred in his affidavit that he was scared that the wobbling wall would fall and injure him. He testified that he brought the situation to Candy's attention, and the two of them went to the center of the wall and used brick chips in an effort to "tighten it up." Pattyson testified that their efforts did not help, but he admitted that he believed that everything would be fine once the mortar set up. He testified that he did not make any other *Page 10 
efforts to push the bricks into the wall because the wall was wet and he believed "it just needed to firm up." Pattyson testified that he then turned away and began packing up his tools as he remained on the scaffold. He testified that the veneer then peeled off and fell on him, knocking him down.
 {¶ 25} Phillips Masonry has met its initial burden by presenting evidence to show that it did not have knowledge that Pattyson would be subjected by his employment to any dangerous process, procedure, instrumentality or condition so that harm to the employee would be a substantial certainty. See Dresher, 75 Ohio St.3d at 293. Pattyson admitted that he had not been watching Candy, so he could not testify that Candy was constructing the corbel veneer in an improper or unsafe manner. Pattyson testified that he had never experienced prior problems with Candy's use of wall ties. Phillips Masonry presented evidence that it did not fail to provide adequate wall ties, because Pattyson admitted that he had been spacing his wall ties 16 inches apart rather than the 32 inches he testified was the industry standard. Further, Pattyson testified that Candy helped him take additional measures to stabilize the "wobbling" wall, but that even Pattyson believed that the wall merely needed to "firm up" as the mortar became set. Pattyson admitted that he did not believe the wall was substantially certain to fall and that he had no reason to believe that Candy knew or thought the wall would fall.
 {¶ 26} Pattyson, however, has failed to meet his reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial.Tompkins, 75 Ohio St.3d at 449. Pattyson failed to present evidence of prior similar incidents. He failed to present evidence of any safety violations or Phillips Masonry's noncompliance with industry safety standards. In addition, he failed to present any evidence that he brought any safety concerns about finishing the wall without additional wall ties to the *Page 11 
company's attention. In fact, he admitted that he did not believe the wall was substantially certain to fall. Rather, he testified that he believed it would be fine once the mortar set up. Under these circumstances, Pattyson failed to present evidence to show that the risk-exposure presented was egregious. Accordingly, the trial court did not err by granting summary judgment in favor of Phillips Masonry. Pattyson's assignment of error is overruled.
 III. {¶ 27} Pattyson's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 12 
SLABY, J. WHITMORE, J., CONCUR
[1] The prior version of R.C. 2745.01 had been held to be unconstitutional. Johnson v. BP Chems., Inc. (1999), 85 Ohio St.3d 298, syllabus. By the date of this decision, two courts have also held the current version of R.C. 2745.01 to be unconstitutional. Kaminski v.Metal Wire Prods. Co., 175 Ohio App.3d 227, 2008-Ohio-1521, at ¶ 36;Barry v. A.E. Steel Erectors, Inc., 8th Dist. No. 90436, 2008-Ohio-3676, at ¶ 21-27. *Page 1