DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Tony Flint has appealed from the judgment of the Lorain County Court of Common Pleas which awarded summary judgment to Defendant-Appellee International Multifoods, Inc. This Court affirms.
 I {¶ 2} On August 19, 2004, Plaintiff-Appellant Tony Flint filed a complaint against Defendant-Appellee International Multifoods, Inc. ("IMF") in the Lorain County Court of Common Pleas. The complaint alleged that IMF committed an employer intentional tort against Appellant while he was a temporary employee at *Page 2 
IMF's Elyria facility. The complaint alleged that while attempting to clean his assigned area, Appellant lost three fingers when he placed his right hand into a spindle-equipped airlock mechanism incorporated into IMF's central vacuuming system. Appellant alleged that IMF's failure to install a manufacturer suggested safety guard on the airlock constituted an employer intentional tort. On October 1, 2004, IMF filed an answer to the complaint. On January 10, 2006, IMF filed a motion for summary judgment. Appellant filed a brief in opposition on February 24, 2006. On April 3, 2006, IMF filed a reply in support of its motion for summary judgment. The trial court granted IMF's motion for summary judgment on April 7, 2006.
 {¶ 3} Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT BY DETERMINING THAT NO GENUINE ISSUES OF MATERIAL FACT REMAINED TO BE LITIGATED WITH RESPECT TO WHETHER [APPELLANT'S] INJURIES WERE THE RESULT OF AN EMPLOYER INTENTIONAL TORT AS ARTICULATED IN FYFFE V. JENO'S INC. (1991), 59 OHIO ST.3D 115."
 {¶ 4} In his sole assignment of error, Appellant has argued that the trial court improperly granted summary judgment to IMF. Specifically, Appellant has argued that genuine issues of material fact remained as to whether his injuries were caused by IMF's intentional tort. This Court disagrees. *Page 3 
 {¶ 5} An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St .3d 102, 105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the nonmoving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 6} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 7} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to *Page 4 
demonstrate a genuine dispute over the material facts. Id. See, also,Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 8} Pursuant to Civ.R. 56(C):
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 9} Appellant has alleged that IMF committed an employer intentional tort against him. In Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, the Ohio Supreme Court articulated the legal standard by which courts determine whether an employer committed an intentional tort against an employee:
 "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
Furthermore, mere knowledge and appreciation of a risk by an employer is not enough to establish intent. Barger v. Freeman Mfg. Supply Co., 9th Dist. No. 03CA008313, 2004-Ohio-2248, at ¶ 10, citing Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. *Page 5 
 {¶ 10} Moreover, in order to establish an intentional tort by an employer, a plaintiff must demonstrate proof beyond that required to prove negligence or recklessness. Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. If a plaintiff can show that harm or consequences will follow the risk, that the employer knows that injuries to employees are certain or substantially certain to result from the risk, and yet the employer still requires the employee to proceed, the employer is treated by the law as if he had in fact desired the end result. See Id.
 {¶ 11} This Court has held that it is the element of substantial certainty which differentiates negligence from an intentional tort.Marks v. Goodwill Industries of Akron, Ohio, Inc. (Mar. 27, 2002), 9th Dist. No. 20706, at *2, citing Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100, 116. According to this Court inMarks, "[t]he line must be drawn where the known danger ceases to be a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the [employer] a substantial certainty." (Quotations omitted). Marks at *2.
 {¶ 12} When determining intent, "this Court proceeds on a case-by-case basis and considers the totality of the circumstances." Id. Concerning substantial certainty, we have stated that:
 "Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty include, but are not limited to: prior acts of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state *Page 6 
 safety violations or noncompliance by the employer with industry safety standards." Id.
 {¶ 13} We begin the analysis by noting that the Fyffe test is a conjunctive test. That is, all three elements must be established in order to maintain a prima facie case of an intentional tort by an employer. It follows, therefore, that if there remains no genuine issue of material fact as to one of the elements discussion of the other elements becomes moot. See Pintur v. Republic Technologies, Internatl,LLC, 9th Dist. No. 05CA008656, 2005-Ohio-6220, at ¶ 11 (finding the issue of substantial certainty dispositive and not addressing the otherFyffe elements). Accordingly, since we find it to be dispositive in the instant matter, we begin our discussion with the substantial certainty prong.
 {¶ 14} This Court has stated that prior acts of a similar nature constitute "relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty[.]" Marks at *2. Here, the record indicates that Appellant's injury is the sole reported accident related to the air lock or the vacuum system at issue. Appellant has argued that while prior similar accidents are one factor to consider in the substantial certainty analysis, it is not dispositive by itself. We agree. However, "[t]he absence of prior accidents strongly suggests that injury from this procedure was not substantially certain to occur." Thomas v.Barberton Steel Iron, Inc. (Apr. 1, 1998), 9th Dist. No. 18546, at *3. The fact that no person had ever been injured in the absence of a guard on the airlock is a significant indicator that IMF could not *Page 7 
have been aware to a substantial certainty that exposure to the vacuum and airlock would result in injury.
 {¶ 15} Another factor to be considered with regard to substantial certainty is federal or state safety violations. Marks at *2. Appellant has argued that he presented expert testimony that IMF's failure to install a guard violated OSHA standards and thus is indicative that IMF had knowledge to a substantial certainty that the accident would occur. This argument is unpersuasive. It is undisputed that prior to the accident, IMF had never been cited or ordered by OSHA with regard to the unguarded airlock and this Court refuses to impute this knowledge to IMF after the fact. Appellant has also noted that since his injury, IMF has installed a safety guard. This fact does not prove that IMF was substantially certain that the injury would occur prior to the accident happening. It only proves that IMF acquired such knowledge after the accident occurred. Moreover, it is well established that evidence of subsequent remedial measures is not admissible to prove culpability in connection with an accident. Evid.R. 407.
 {¶ 16} There is no question that working around heavy machinery with moving parts is inherently dangerous work. However, "dangerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach." Naragon v. Dayton Power LightCo. (Mar. 30, 1998), 3d Dist. No. 17-97-21, at *7. "Were it otherwise, any injury associated with inherently *Page 8 
dangerous work * * * could subject an employer to intentional tort liability, whatever the cause." Id.
 {¶ 17} Appellant has also argued that the failure to install a protective guard over the airlock is dispositive. Appellant has citedWalton v. Springwood Products, Inc. (1995), 105 Ohio App.3d 400 to support his argument. In Walton, the Eleventh Appellate District held:
 "[W]here the safety feature omitted is not a secondary or ancillary guard, but the primary protective device, the failure of the employer to attach such a guard creates a factual issue which would be sufficient to overcome a summary judgment exercise under the rule announced in Fyffe ." Walton, 105 Ohio App.3d at 405.
 {¶ 18} Appellant has argued that the absent guard was mandated by the manufacturer of the airlock and was the primary protective device. Accordingly, Appellant has argued that IMF's failure to install it created a factual issue sufficient to overcome summary judgment. We disagree.
 {¶ 19} While this Court respects the decision of its sister district, we decline to apply Walton's holding in the present matter. This Court's precedents firmly state that removal of a safety guard is not dispositive, but simply one factor to consider in the substantial certainty analysis. Trojan v. Ro-Mai Industries, Inc. (Aug. 19, 1998), 9th Dist. No. 18778, at *4. This Court's position is supported byFyffe:
 "[W]here the facts in a given case show that the employer has deliberately removed a safety guard from equipment which employees are required to operate, trial courts may in their determination of motions for summary judgment pursuant to Civ.R. *Page 9 
 56, and in the application of our common-law pronouncements of what may constitute an `intentional tort,' consider this evidence, along with the other evidence in support of, and contra to, such motion for summary judgment." (Emphasis added). Fyffe, 59 Ohio St.3d at 119.
In Trojan, this Court found that ordering a protective guard and never installing it perhaps indicated negligence, but did not rise to the egregious level required for an employer intentional tort.Trojan at *5, citing Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. As we have held as recently as 2006, "[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to * * * institute safetymeasures[.] Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However * * * such conduct should not be classified as an intentional tort." (Emphasis added) (Quotations omitted). Harris v. Bekaert Corp., 9th Dist. No. 05CA0056,2006-Ohio-1487, at ¶ 18.
 {¶ 20} After analyzing the totality of the circumstances, we cannot conclude that IMF was substantially certain that injury would result from Appellant cleaning the area around the airlock.
 {¶ 21} Appellant has further argued that Fyffe is factually and legally on point with the instant matter. While Fyffe bears some resemblance to the case sub judice, there are glaring and significant differences. In Fyffe, the injured party was a sanitation employee whose job duties actually included cleaning machinery in the Jeno's plant. SeeFyffe, 59 Ohio St.3d at 119. On the night Fyffe was injured, *Page 10 
he was instructed by his supervisors to clean the conveyor system which ultimately caused his injuries. Id. Further, Fyffe testified that it was common practice to reach into the conveyor belt to retrieve objects, that sanitation employees were trained to do just that, and that the conduct was sanctioned by Jeno's because it was faster to clean the machines with them running. Id. Fyffe's testimony was corroborated to an extent by Jeno's safety manager when he "stated that the conveyors were cleaned while they were running `because they clean faster that way.'" Id.
 {¶ 22} The present case presents a contrary factual scenario. Here, the record is unclear whether Appellant was required to clean the machine which caused his injuries. In his deposition testimony, Appellant conceded that his sole job on the date he was injured was to keep the floor clean. At other points, he contradicted himself and testified that he was required to clean the "area." Still other times he testified that he was required to clean the "chute." Then, Appellant testified that he had never received specific instructions to clean any part of the central vacuum system. Appellant also testified that he was not instructed to clean the shaft housing the airlock, but instead was told to the clean the area near the machine. Moreover, IMF has denied that Appellant was required to clean the airlock or the chute. IMF has asserted that it only required Appellant to clean the area. *Page 11 
 {¶ 23} Regardless of whether Appellant was required to clean the machine, the area, or the simply the floor, Fyffe is still inapposite because there is no indication in the record that IMF sanctioned, trained, or condoned the practice of reaching into this particular machine while cleaning to remove obstructions. In fact, IMF safety coordinator Robert Jackson testified that IMF specifically instructed temporary employees to not stick their hands into moving equipment.
 {¶ 24} This Court finds its decision in Trojan, supra, to be more akin to the present case. In Trojan, the injured employee was responsible for operating plastic injection molding machines. Id. at *1. While operating one of these machines, Trojan reached into the machine to dislodge a part stuck in the mold. Id. Trojan inadvertently hit the "mold close" button, causing the mold to close on his left hand. Id. Trojan sued, alleging that RMI's failure to install safety guards constituted an intentional tort. Id. This Court disagreed, holding in part that Trojan had exceeded the normal operation of his machine by voluntarily placing his hand within the operating area of the machine. Id. at *5.
 {¶ 25} In a similar fashion, even if Appellant had been tasked to clean around the chute, he exceeded the scope of his employment by voluntarily putting his hand up into the airlock. There was no reason for Appellant to stick his hand into a shaft connected to an operative machine with which he was unfamiliar. Appellant has argued it would be foreseeable that a temporary laborer, hoping to parlay his opportunity into fulltime work, would do his best when told to clean an *Page 12 
area. While that may be true, to a reasonably prudent person, doing one's best does not include reckless conduct. Further, Appellant's argument does not demonstrate that IMF knew to a substantial certainty that instructing an employee to clean an area would result in said employee sticking his hand into a running machine.
 {¶ 26} The Fyffe test requires more than an employee being injured from exposure to a dangerous condition at work. It requires that an employer has knowledge to a substantial certainty that an employee will be harmed if that employee is subjected by his employment to suchdangerous process, procedure, or instrumentality. Here, there is no evidence that Appellant was subjected to a dangerous instrumentality by his employment with IMF. IMF could not have known that ordering Appellant to clean the area near a running machine would result in Appellant reaching his hand into the moving parts of that machine, whatever the reason.
 {¶ 27} Based upon the lack of substantial certainty and the lack of any evidence to indicate IMF required Appellant to clean the airlock, we find that Appellant has failed to establish facts to demonstrate that the level of risk-exposure was so egregious as to amount to an intentional wrong. See Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172
 {¶ 28} Appellant's sole assignment of error lacks merit. *Page 13 
 III {¶ 29} Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 14 
 CARR, J. MOORE, J. CONCUR *Page 1