DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiffs-Appellants, James and Michelle Adkins, appeal the judgment of the Lorain County Court of Common Pleas that granted summary judgment to Defendant-Appellee, Atom Blasting Finishing, Inc. We affirm.
 {¶ 2} Appellee is a small business engaged in metal finishing, which involves removing scale or slag from the surface of metal so that it can be painted. Metal finishing is accomplished through "blasting," or directing various abrasive materials at the surface of the metal at high pressure. The blasting process occurs through varying levels of automation, ranging from contained blasting machines to *Page 2 
manual blasting, which requires an employee to direct abrasives at the metal through a hose using compressed air. At Appellee's facility, the latter process takes place in the blasting room, a structure that has been physically separate from the main plant since 1980. The area of the blasting room is approximately five hundred square feet, and it is located in close proximity to the 7,500-foot main plant.
 {¶ 3} Appellant James Adkins worked for Appellee as a blaster from approximately 1988 through 1990. He returned to the same position in 1991 and remained with Appellee until 2002, when his physician recommended that he seek other employment due to complaints of frequent nosebleeds, dizziness, and pain in his hands. Two months later, Mr. Adkins attended a free silicosis screening at Southwest General Hospital. The results indicated that he more than likely suffered from silicosis.
 {¶ 4} On April 12, 2005, Mr. Adkins and his wife, Appellant Michelle Adkins, filed a complaint in the Lorain County Court of Common Pleas alleging that his medical condition resulted from the intentional, willful, and wanton acts of Appellee. Appellants also alleged loss of consortium on the part of Mrs. Adkins. On August 11, 2006, Appellee moved for summary judgment, arguing that Appellants could not establish the elements of a common law intentional tort claim against an employer. Appellants responded in opposition on October 23, 2006. *Page 3 
The trial court granted summary judgment to Appellee on January 23, 2007, and this appeal followed.
 ASSIGNMENT OF ERROR I "The Trial Court erred in granting [Appellee's] Motion for Summary Judgment."
 {¶ 5} In their sole assignment of error, Appellants maintain that the trial court erred in granting summary judgment to Appellee because there was a genuine issue of material fact with respect to whether Appellee knew with substantial certainty that its employees would contract silicosis. We disagree.
 {¶ 6} In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. In applying this standard, evidence is construed in favor of the nonmoving party, and summary judgment is appropriate if reasonable minds could only conclude that judgment should be entered in favor of the movant nonetheless. Horton v. Harwich Chem. Corp. (1995),73 Ohio St.3d 679, 686-87.
 {¶ 7} The moving party "`bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.'" Vahila v. Hall (1997), *Page 4 77 Ohio St.3d 421, 429, quoting Dresher v. Burt (1998), 75 Ohio St.3d 280, 293. The nonmoving party then has a reciprocal burden to set forth specific facts, by affidavit or as otherwise provided by Civ.R. 56(E), which demonstrate that there is a genuine issue for trial. Byrd v. Smith,110 Ohio St.3d 24, 2006-Ohio-3455, at ¶ 10.
 {¶ 8} The Ohio workers compensation system provides the exclusive remedy to employees injured in the course and scope of their employment:
 "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter." R.C. 4123.74.
This system does not, however, shield employers from liability for injuries that result from the employer's intentional and malicious acts.Van Fossen v. Babcock Wilson Co. (1988), 36 Ohio St.3d 100, 111-12. Consequently, an employer may be liable in tort for injuries to an employee when the employer knew that a dangerous process, procedure, instrumentality or condition existed which was substantially certain to cause injury to the employee, but required the employee to perform the task regardless. Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. *Page 5 
 {¶ 9} A plaintiff alleging injury resulting from a tortious action by an employer must establish: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe, 59 Ohio St. 3d at paragraph one of the syllabus.[1] Because the Fyffe test is conjunctive, a failure of proof on one element renders discussion of the remaining elements moot. See Harris v. Bekaert Corp., 9th Dist. No. 05CA0056, 2006-Ohio-1487, at ¶ 14. Summary judgment can therefore be granted to an employer when there is no genuine issue of material fact with respect to one element and, with respect to that element, the employer is entitled to judgment as a matter of law. See id., citingPintur v. Republic Technologies Internatl, LLC, 9th Dist. No. 05CA008656, 2002-Ohio-6220, at ¶ 11. *Page 6 
 {¶ 10} In order to establish an intentional tort by an employer, proof beyond negligence and recklessness is required, but as the probability of harm increases to the point of substantial certainty, the law infers intent to produce the result. Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. This court has held that it is the element of substantial certainty which differentiates negligence from an intentional tort.Marks v. Goodwill Industries of Akron, Ohio, Inc. (Mar. 27, 2002), 9th Dist. No. 20706, at *2, citing Van Fossen, 36 Ohio St.3d at 116. "The line must be drawn where the known danger ceases to be a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the [employer] a substantial certainty." (Quotations omitted).Marks at *2. Accordingly, exposure to conditions or processes that are dangerous — even unusually so — is insufficient in itself to establish substantial certainty of injury. Delnoce v. Bridgestone/Firestone,Inc. (Feb. 9, 1999), 9th Dist. No. 18883, at *4.
 {¶ 11} When determining intent, "this Court proceeds on a case-by-case basis and considers the totality of the circumstances." Marks at *2. Concerning substantial certainty, we have stated that:
 "Some of the relevant facts and circumstances which support the conclusion that an employer's knowledge that harm to the employee was a substantial certainty include, but are not limited to: prior acts of a similar nature, the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards." Id. *Page 7 
Our analysis is the same whether the employee alleges a workplace injury or an occupational disease. See, e.g., Dunn v. Rossborough Mfg. Co.
(Apr. 29, 1998), 9th Dist. No. 96CA006632 (analyzing claim based on diagnosis of sarcoidosis).
 {¶ 12} In this case, there is no evidence that other employees contracted silicosis or that Appellee concealed or misrepresented the dangers inherent in metal finishing. Appellants' argument hinges on the proposition that failure to fully implement safety procedures is sufficient to establish that an employer acted with substantial certainty that the employee would contract an occupational disease. Considering the totality of the circumstances in this case, however, we are not persuaded that intent can be imputed to Appellee on this basis.
 {¶ 13} In support of his claim, Mr. Adkins produced the affidavit of Richard Dell, who was affiliated prior to his retirement in 2005 with Case Western Reserve University as Associate Director of Occupational and Environmental Safety. Mr. Dell summarized the history of silicosis awareness in the occupational health community and commented on Appellee's compliance with relevant OSHA regulations. Although he acknowledged that Appellee had only received one OSHA citation, Mr. Dell opined that Appellee's overall level of compliance with OSHA regulations was minimal. Mr. Dell also noted that Appellee continued to use a product that contained silica until at least 2003. Although Mr. Dell noted the inherent risk of silicosis in metal finishing and provided historical examples of silicosis clusters in industrial sites, Mr. Dell did not quantify a level of risk for *Page 8 
employees to develop silicosis in operations similar to those of Appellee. Nonetheless, Mr. Dell inferred that Appellee "was well aware of the dangers of exposure to silica dust, and the potential for development of silicosis, in its employees as a result of the blasting process."
 {¶ 14} Mr. Rick Ferry was hired by Appellee in 1973 as plant manager. In subsequent years, Mr. Ferry purchased shares of the corporation, ultimately becoming the sole shareholder and president. His deposition testimony indicated that he was generally aware of the risk of silicosis within the metal finishing industry because "the government says so." He was unable to articulate an understanding of the causes or particular dangers of silicosis and equated the risk with other, more general risks of working in an environment with particulates in the air:
 "Q: You don't know whether [the employees] can contract silicosis if you don't protect them, right?
 "A: No, I don't. I don't know.
 "* * *
 "A: I don't know if there is any danger. You know, I work there. I did the same thing.
 "Q: Let me ask you straight out. If the government didn't tell you to protect them, would you do it?
 "A: Yes.
 "Q: Why? *Page 9 
 "A: Because we always have. Ever since I've been there there's always been protective gear.
 "* * *
 "Q: Do you know why they put it there?
 "A: To protect you, yes.
 "Q: From what?
 "A: From anything. You could get it in your eyes."
Prior to 1998, Mr. Ferry stated, he believed Appellee was in compliance with the law.
 {¶ 15} Mr. Ferry's son, Erik Ferry, has also been employed by Appellee since 1998. Like his father, Erik Ferry's deposition testimony indicated that he performs whatever job functions are required of him. In 1998, following an OSHA citation for impermissible levels of silica at Appellee's facility, Erik voluntarily assumed the responsibility of bringing the plant into compliance: "I reviewed all the allegations from OSHA, and I asked for their assistance, Workmen's Comp, and I did exactly what they told me to do." Erik obtained a copy of the pertinent OSHA regulations and reviewed "all the ones they've pointed out to me." Erik testified that he verbally informed employees about safety procedures and that supervisors were responsible for instructing employees regarding use of respirators. He acknowledged that Appellee did not conduct periodic medical examinations of employees or testing of air quality because he did not know these measures were required. *Page 10 
 {¶ l6} At most, the evidence indicates that Appellee's representatives possessed a general understanding that silicosis is one of several health risks inherent in their industry. They took steps to eliminate these risks in general because, as Rick Ferry testified, they were told that it was a good thing to do and they were concerned for the overall welfare of their employees. Appellee stopped using product containing silica abrasives in 1995, with the exception of trace amounts identified by Mr. Adkins' expert witness in the replacement material. The Ferrys continued to perform the same blasting duties as Mr. Adkins when necessary, under the same conditions, wearing the same protective equipment.
 {¶ 17} Viewing the evidence in the light most favorable to Appellants, as we must, we are unable to conclude that intent to injure Mr. Adkins can be imputed from Appellee's level of appreciation of the risk in this case. Appreciation of the risk of silicosis in the metal finishing industry is not tantamount to knowledge that it is substantially certain employees will contract the disease. "Mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent."Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. Appellant's assignment of error is overruled.
 {¶ 18} Appellants' assignment of error is overruled, and the judgment of the trial court is affirmed.
 Judgment affirmed. *Page 11 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
WHITMORE, J., MOORE, J., CONCUR.
[1] R.C. 2745.01, which was amended effective April 7, 2005, provides that "`substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." This measure of substantial certainty is more restrictive than the standard set forth by the Supreme Court inFyffe and its progeny. We need not address the applicability of R.C.2745.01 to this case, however, because we conclude that summary judgment was proper even under the less demanding standard set forth inFyffe. *Page 1